1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                        SOUTHERN DISTRICT OF CALIFORNIA

10   CHRISTOPHER WEBSTER,                    Civil No.    08-cv-0189-BEN (POR)

11                             Plaintiff,    **REPORT AND RECOMMENDATION
                                             GRANTING IN PART AND DENYING
12          v.                               IN PART PLAINTIFF'S MOTION FOR
                                             SUMMARY JUDGMENT AND
13                                           DEFENDANT'S CROSS MOTION FOR
     MICHAEL J. ASTRUE, Commissioner of      SUMMARY JUDGMENT**
14   Social Security
                                             **[Document No. 14-3]**
15                             Defendant.    **[Document No. 16]**

16
17
18                             **I. INTRODUCTION**

19          On January 30, 2008, Plaintiff Christopher Webster ("Plainitff") filed a complaint pursuant

20   to section 205(g) of the Social Security Act ("SSA") requesting judicial review of the final decision

21   of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant")

22   regarding the denial of Plaintiff's claim for disability insurance and supplemental security income

23   benefits.  (Doc. 1.)  On April 27, 2009, Plaintiff filed a motion for summary judgment regarding his

24   205(g) claim.  (Doc. 14-3.)

25   //
26   //
27   //
28   //

1    Plaintiff contends the Administrative Law Judge ("ALJ") erred in (1) ignoring the State

2  agency medical consultant's expert opinion,(2) relying on the Medical-Vocational Guidelines ("Grid

3  Rules")[1], (3) failing to evaluate the effect of Plaintiff's obesity, and (4) finding Plaintiff's testimony

4  not credible.  (Id.)  On May 12, 2009, Defendant filed a cross-motion for summary judgment (Doc.

5  16) and opposition to Plaintiff's motion for summary judgment.  (Doc. 17.)  Plaintiff did not file an

6  opposition to Defendant's cross-motion for summary judgment.

7    The Court finds the motions appropriate for submission on the papers and without oral

8  argument pursuant to Local Rule 7.1(d)(1).  For the reasons set forth herein, the Court

9  RECOMMENDS Plaintiff's Motion for Summary Judgment (Doc. 14-3) be GRANTED in part and

10  DENIED in part and Defendant's cross motion for summary judgment be GRANTED in part and

11  DENIED in part.  (Doc. 16.)

12                          **II. PROCEDURAL BACKGROUND**

13    On August 30, 2005, Plaintiff filed an initial application for Disability Insurance Benefits

14  and Supplemental Security Income.  (Administrative Record[2] 76-81.)  After a January 25, 2006

15  denial at the initial determination (AR 35-39) and a May 16, 2006, denial on reconsideration (AR

16  50-55), Plaintiff filed a timely request for hearing before an administrative law judge (hereinafter

17  "ALJ") on June 16, 2006.  (AR 58-59.)  On February 28, 2007, Plaintiff appeared and testified,

18  represented by Chadwick Simpson, at an administrative hearing before an ALJ.  (AR 248-262.)  On

19  March 24, 2007, the ALJ denied Plaintiff benefits.  (AR 18-27.)  The decision of the Social Security

20  Administration (hereinafter "SSA") became final when the Appeals Council adopted the ALJ's

21  findings by decision dated November 29, 2007.  (AR 4-6.)  Thereafter, Plaintiff filed the instant

22  action in Federal Court on January 30, 2008.  (Doc. 1.)

---

[1] The Grid Rules are a shorthand way of evaluating vocational factors which "eliminates the need for calling in vocational experts."  Heckler v. Campbell, 461 U.S. 458 (1983).  These rules, contained in 20 C.F.R. Part 404 Subpart P Appx 2, are not mere guidelines, but are in fact "rules reflect[ing] the major functional and vocational cases which cannot be evaluated on medical considerations alone..."  For individuals whose characteristics match the criteria of a particular Grid Rule, each rule "directs a conclusion as to whether the individual is or is not disabled.: 20 C.F.R. Part 404 Subpart P Appx 2 § 200.00(a).

The Grids consist of three matrices, labeled as "Tables."  Each table represents a different RFC: sedentary, light work, and medium work.  The remaining Grids consist of the other vocational factors which Congress identified as important: age, education, and work experience.  Heckler, 461 U.S. at 458.  For each combination of factors, the Grids determine whether the claimant is disabled  or not disabled.

[2]Administrative Record, hereinafter "AR."

### III. FACTUAL BACKGROUND

Plaintiff was born on October 23, 1964 and was 41 on the alleged disability onset date of May 20, 2005.  (AR 26.)  When Plaintiff was 12 years old, he was struck by a drunk driver.  (AR 252.)  At age 13, Plaintiff suffered a significant laceration to his right knee when he accidentally dove through a glass door.  (AR 252.)  As a result of both accidents, Plaintiff suffered injury to his right knee and leg.  (AR 252.)  The record shows Plaintiff has been treated for complaints of back pain, knee pain, and elbow pain.  In July, 2004, Plaintiff had right knee arthroscopic surgery.  (AR 23, 126.)

From August 1992 through February 1998, Plaintiff worked as a cashier at a gas station.  (AR 124.)  From April 1998 through October 2001, Plaintiff worked as a stocker and cook at a casino.  (AR 124.)  Starting on November 20, 2001, Plaintiff worked as a retail cashier.  (AR 110.)  Plaintiff stopped work in November 2003 due to his alleged disability.  (AR 110.)  Plaintiff returned to work again on September 27, 2004, and worked until May 20, 2005.  (AR 110.)  During this period, Plaintiff reduced his hours to one 8 hour day per week due to his alleged impairments.  (AR 110.) Plaintiff has at least a high school education and is able to communicate in English.  (AR 26.)

At the February 28, 2007 hearing before the ALJ, Plaintiff testified he is unable to work because of back, neck, shoulder, and knee problems.  (AR251-262.)  Plaintiff testified he seeks disability primarily to be eligible for medical benefits, which would allow him to get treatment for his back and knees, and which would eventually allow him to return to work.  (AR 251.)  Further, Plaintiff stated he does not have health insurance and the only pain medication he takes is Ibuprofen, which County Medical Services is paying for.  (AR 256.)  Plaintiff also testified he takes care of the cat, empties the trash, cleans the kitchen, and does a little walking at home.  (AR 256.)  Plaintiff testified he can no longer jog and play golf due to his pain.  (AR 257.)

After consideration of all the evidence, the ALJ concluded Plaintiff had not been under disability within the meaning of the SSA since his alleged disability onset of May 20, 2005.  (AR 21.)  Specifically, the ALJ found[3]: (1) Plaintiff meets the insured status requirements of the SSA through September 30, 2010; (2) Plaintiff has not engaged in substantial gainful activity since May

---

[3] The following findings are taken directly from the ALJ's decision.  (AR 23-27.)

20, 2005; (3) Plaintiff has the severe impairments of chronic low back pain and chronic knee pain; (4) Plaintiff's impairments have not met or equaled the requirements of any listing of the Listing of Impairments; (5) Since May 20, 2005, Plaintiff has had a residual functional capacity to lift/carry 20 pounds occasionally, lift/carry 10 pounds frequently, stand/walk for 2 hours of an 8 hour day, and sit for 6 hours of an 8 hour day; (6) Plaintiff is unable to perform any past relevant work; (7) Plaintiff was a "younger individual" on the alleged disability onset date; (8) Plaintiff has a high school education and is able to communicate in English; (9) Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled;" (10) Considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy; and (11) Plaintiff has not been under a disability from May 20, 2005 through the present. (AR 23-27.)

The ALJ's findings reflect he considered opinion evidence, Plaintiff's symptoms, and the extent to which Plaintiff's symptoms were consistent with the objective medical evidence and other evidence. (AR 24-26.) The ALJ took Plaintiff's statements that his pain is aggravated by prolonged walking and standing into consideration. (AR 24.) Although the ALJ concluded Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," the ALJ did not find Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms [were] entirely credible." (AR 24.)

The ALJ noted the following: Plaintiff was able to work for 8 hours per day for one day a week despite his alleged disability; "the weight of the evidence [did] not support the claims of the [Plaintiff's] disabling limitations to the degree alleged;" Plaintiff's doctors reported near normal physical examination on multiple occasions with only abnormal findings of moderate tenderness, some restricted range of motion of the lumbar spine, and slight limitation in abduction of the right shoulder; the x-rays of Plaintiff's knees and spine in October 2006 and January 2007 were normal except for thinning of the medial facet of the retropatellar cartilage; Plaintiff's course of treatment has been conservative; Plaintiff can play computer games as long as he changes positions frequently; despite Plaintiff's allegations of disabling fatigue and weakness, Plaintiff does not exhibit any

significant atrophy, loss of strength, or difficulty moving; Plaintiff has not been taking pain

medication prescribed for severe pain; there is no evidence of loss of weight, sleep deprivation, or

disuse or muscle atrophy due to Plaintiff's pain; Plaintiff's allegations of significant limitations are

not borne out in his description of his daily activities; and none of Plaintiff's physicians opined he

was totally and permanently disabled from any kind of work. (AR 24-25.) Based thereon, the ALJ

concluded Plaintiff's "allegations [were] not credible to establish a more restrictive [RFC]." (AR

25.)

Moreover, in determining Plaintiff's RFC, the ALJ gave little weight to the opinion of

treating physician Paul Kater, M.D. that Plaintiff was "unable to work." (AR 26.) The ALJ found

Dr. Kater's opinion to be conclusory, vague, and based primarily on the subjective account of

Plaintiff's symptoms rather than objective clinical findings. (AR 26.) Further, the ALJ also gave

little weight to the opinion of treating chiropractor Anthony Woods, D.C., because chiropractors are

not acceptable medical sources for purposes of establishing an impairment and because his findings

were not substantiated by sufficient clinical findings. (AR 26.) Finally, the ALJ gave much more

weight to the opinion of consulting internist Carl Sainten, M.D., who concluded Plaintiff could lift

or carry 10 pounds frequently and 20 pounds occasionally, stand, sit and walk for 6 hours of an 8

hour day, limit his pushing and pulling in the lower extremities, and not climb, stoop, kneel or

crouch. The ALJ held Dr. Sainten's opinion was substantiated by his clinical findings and other

objective evidence in the record. (AR 26.)

      **1.     Medical Evidence**

          **a.     Treating Physician Evidence**

Starting in January 2004, Plaintiff received treatment from Paul Kater, M.D., through County

Medical Services. (AR 171-177, 198, 200-213, 238A-238I.) On February 24, 2006, Dr. Kater wrote

a letter on Plaintiff's behalf. (AR 198.) Dr. Kater stated Plaintiff was unable to work at that time

due to pain in his legs, back and left shoulder, and he "saw no reason that his outlook or prognosis

[would] change until [Plaintiff] [got] substantial medical help." (AR 198.) Dr. Kater stated that

after examining Plaintiff, he found Plaintiff's statements, concerns, and descriptions were accurate.

(AR 198.) Further, Dr. Kater noted Plaintiff used a cane for ambulation and appeared uncomfortable

1    at rest.  (AR 198.)

2         On July 14, 2006, Dr. Kater completed a Multiple Impairment Questionnaire.  (AR 238A-

3    238I.)  Dr. Kater indicated Plaintiff's knee and back were in poor condition and improvement would

4    be impossible until he could see an orthopedist, which Dr. Kater noted Plaintiff could not afford.

5    (AR 238A-238B.)  Dr. Kater concluded Plaintiff was incapable of even low stress work.  (AR

6    238G.)

7         Plaintiff also received chiropractic treatment from Anthony Woods, D.C. beginning July

8    2000 for back, arm and knee pain.  (AR 199.)  On March 15, 2006, Dr. Woods submitted a letter on

9    behalf of Plaintiff.[4]  (AR 199.)  Dr. Woods' letter notes the following findings: Plaintiff's condition

10   had gotten worse over the last year and a half; Plaintiff walks with a cane, has trouble getting on and

11   off the adjusting table, and his left knee is swollen with limited flexion; Plaintiff exhibited a

12   decrease in upper body strength, a decrease in abduction of both arms, and a restricted range of

13   motion in the lumbar spine and associated muscle spasms.  (AR 199.)  Dr. Wood concluded Plaintiff

14   was unable to work at any jobs requiring standing or lifting more than 10 pounds.  (AR 199.)

15                    **b.    Examining Physician Evidence**

16        On December 29, 2005, Dr. Carl B. Sainten performed a Complete Internal Medicine

17   Evaluation of Plaintiff.[5]  (AR 178-184.)  Dr. Sainten's evaluation notes the following: Plaintiff

18   stated he had a history of chronic bilateral knee pain, dating back to 1977; Plaintiff stated he had

19   surgery in July 2004, which gave him temporary relief, but the pain had returned and he now needed

20   to use a cane; Plaintiff complained of back pain, which over the years he claimed had gotten

21   progressively worse.  (AR 178-179.)  Upon examination, Dr. Sainten found the following: Plaintiff

22   had moderate tenderness to palpation over the lumbosacral area in the midline; Plaintiff's straight

23   leg raising on the left was 50 degrees with some pain in the lower back, whereas it was negative on

24   the right at 90 degrees; Plaintiff's range of motion in his right shoulder was slightly limited due to

25   tenderness; Plaintiff had tenderness to palpation around the entire knee even though there was no

26

27        [4]Actual medical records from Dr. Woods are not included in the record.  Thus, the Court only has Dr. Wood's letter
     to rely upon.

28        [5] The record is unclear whether the Complete Internal Medicine Evaluation was ordered by the Social Security
     Administration or by the Plaintiff.

gross swelling, warmth, rubor, or effusion; Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally, and stand, sit and walk for 6 hours of an 8 hour day; Pushing and pulling in the lower extremities were limited, and he recommended no climbing, stooping, kneeling or crouching. (AR 181-183.)

On October 19, 2006, Dr. Arthur Cardones, M.D., examined Plaintiff for pain in his knees and low back.[6] Dr. Cardones noted Plaintiff weighed 289 pounds and had tenderness to palpation in the lower thoracic and lumbar spine. (AR 239-246.) Plaintiff also had a positive straight leg raising on the left, and decreased range of motion. Examination of the knees revealed mild crepitus and decreased range of motion. On November 29, 2006, Dr. Cardones saw Plaintiff again and opined Plaintiff had chronic low back pain, chronic knee pain, and obesity. (AR 241.) On January 10, 2007, Dr. Cardones saw Plaintiff and noted his weight was 299 pounds. (AR 242.) Dr. Cardones noted Plaintiff's complaints of locking and giving way of the left knee, causing Plaintiff to collapse at times. (AR 242.) Examination of the left knee demonstrated positive swelling at the lateral joint line, with increased pain upon extension. (AR 242.) Although the October 2006 x-rays of the knees were within normal limits, Dr. Cardones ordered an MRI of the left knee, and recommended Plaintiff lose weight, use a cane and knee brace. (AR 242.)

On January 25, 2007, an MRI was performed of Plaintiff's left knee. (AR 246.) The MRI demonstrated scarring along the medical aspect of the Hoffa's fat pad, thinning of the retropatellar cartilage, and presence of medial plica. (AR 246.)

c.      **Non-Examining Physician Evidence**

On January 19, 2006, Dr. J. Ross, M.D., a state agency medical consultant, reviewed Plaintiff's file for Social Security. (AR 190-197.) Dr. Ross found the following: Plaintiff's ability to push and pull was limited in the upper and lower extremities; in the upper extremities, Plaintiff was excluded from constant push and pull; in the lower extremities, Plaintiff was precluded from all pushing and pulling; climbing ramps and stairs, balancing and stooping could only be done occasionally; kneeling, crouching and crawling could not be done at all, and overhead reaching should be limited. (AR 191-193.) Dr. Ross stated he considered Plaintiff's obesity in determining

---

[6] Dr. Cardones' report is unclear whether he was a treating or examining physician.

1  Plaintiff's limitations.  (AR 191.)  Ultimately, Dr. Ross disagreed with Dr. Sainten's opinion that

2  Plaintiff could stand/walk 6 hours of an 8 hour day, and instead concluded Plaintiff could stand/walk

3  only 2-4 hours of an 8 hour day.  (AR 196.)

**IV. DISCUSSION**

5  **1.      Legal Standard Regarding Review of Denial of Disability Claim**

6          To qualify for disability benefits under the Social Security Act, applicants must show two

7  things:  (1) They suffer from a medically determinable impairment that can be expected to last for a

8  continuous period of twelve months or more, or would result in death; and (2) the impairment

9  renders applicants incapable of performing the work they previously performed or any other

10  substantially gainful employment that exists in the national economy.  See 42 U.S.C.A. §§

11  423(d)(1)(A), (2)(A) (West Supp. 2008).  An applicant must meet both requirements to be classified

12  as "disabled."  Id.

13          Sections 205(g) and 1631(c)(3) of the Social Security Act allow applicants whose claims

14  have been denied by the SSA to seek judicial review of the Commissioner's final agency decision.

15  42 U.S.C.A. §§ 405(g), 1383(c)(3) (West Supp. 2008).  The Court should affirm the decision unless

16  "it is based upon legal error or is not supported by substantial evidence."  Bayliss v. Barnhart, 427

17  F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).

18          "Substantial evidence is such relevant evidence as a reasonable mind might accept as

19  adequate to support [the ALJ's] conclusion[,]" considering the record as a whole.  Webb v. Barnhart,

20  433 F.3d 683, 686 (9th Cir. 2005) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It

21  means "'more than a mere scintilla but less than a preponderance[]'" of the evidence.  Bayliss, 427

22  F.3d at 1214 n.1 (quoting Tidwell, 161 F.3d at 601).  "'[T]he court must consider both evidence that

23  supports and the evidence that detracts from the ALJ's conclusion . . . .'"  Frost v. Barnhart, 314

24  F.3d 359, 366-67 (9th Cir. 2002) (quoting Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

25          To determine whether a claimant is "disabled," the Social Security regulations use a five-step

26  process outlined in 20 C.F.R. § 404.1520 (2008).  If an applicant is found to be "disabled" or "not

27  disabled" at any step, there is no need to proceed further.  Ukolov v. Barnhart, 420 F.3d 1002, 1003

28  (9th Cir. 2005) (quoting Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir.

2000)).  Although the ALJ must assist the applicant in developing a record, the applicant bears the burden of proof during the first four steps.  Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999).  If the fifth step is reached, however, the burden shifts to the Commissioner.  Id. at 1098.  The steps for evaluating a claim are as follows:

> **Step 1.**  Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits.  If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

> **Step 2.**  Is the claimant's impairment severe?  If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three.

> **Step 3.**  Does the impairment "meet or equal" one of a list of specific impairments described in the regulations?  If so, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four.

> **Step 4.**  Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits.  If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step.

> **Step 5.**  Is the claimant able to do any other work?  If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits.  If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do.  There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do:  (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits.  If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits.

Id. at 1098-99 (footnotes and citations omitted); see also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001) (giving an abbreviated version of the five steps).

Section 405(g) permits this Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C.A. § 405(g).  The matter may also be remanded to the Social Security Administration for further proceedings.  Id.  After a case is remanded and an additional hearing is held, the Commissioner may modify or affirm the original findings of fact or the decision.

1

2    Id.

3         "If the evidence can reasonably support either affirming or reversing the Secretary's

4    conclusion, the court may not substitute its judgment for that of the Secretary." Flaten v. Sec'y

5    Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  The Court must uphold the denial of

6    benefits if the evidence is susceptible to more than one rational interpretation, one of which supports

7    the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)

8    **2.      State Agency Medical Opinion**

9         The parties do not dispute the ALJ's determination at steps one through four.  Instead, the

10   dispute centers around the ALJ's step-five determination.  Plaintiff contends the ALJ erred in

11   ignoring the expert opinion of state agency medical consultant, Dr. Ross, in determining Plaintiff's

12   RFC.  (Doc. 14-3 at 10-11.)  Specifically, Plaintiff contends the ALJ did not include any of Dr.

13   Ross' nonexertional limitations in his RFC or explain what weight, if any, he gave Dr. Ross'

14   opinion.  (Doc. 14-3 at 10.)  Defendant contends the ALJ reasonably accounted for Dr. Ross'

15   opinion and ultimately, the ALJ's RFC finding was consistent with Dr. Ross' opinion.  (Doc. 17 at

16   3-4.)  Particularly, Defendant asserts Dr. Ross' opinions were consistent with the ALJ's assessment

17   Plaintiff was capable of performing sedentary or light jobs.  (Doc. 17 at 3-4.)

18        "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians:

19   (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

20   claimant (examining physicians); and (3) those who neither examine nor treat the claimant

21   (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

22   The opinions of treating doctors are generally given more weight than the opinions of nontreating

23   doctors. Id. (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  The opinion of an

24   examining doctor is entitled to greater weight than that of a nonexamining doctor. Id. (citing Pitzer

25   v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450 (9th Cir. 1984)).

26   However, "[t]he findings of a nontreating, nonexamining physician can amount to substantial

27   evidence, so long as other evidence in the record supports those findings." Saelee v. Chater, 94 F.3d

28   520, 522 (9th Cir. 1996).  The nonexamining physician's opinion must be "supported by other

     evidence in the record and [be] consistent with it." Morgan, 169 F.3d 595, 600 (9th Cir. 1999.)

1

2      Administrative law judges are not bound by any findings made by state agency medical or

3  psychological consultants.  20 C.F.R. § 404.1527.  However, state agency medical consultants and

4  other program physicians are highly qualified physicians who are also experts in social security

5  disability evaluation.  (Id.).  Accordingly, "[f]indings of fact made by State agency medical and

6  psychological consultants...regarding the nature and severity of an individual's impairment(s) must

7  be treated as expert opinion evidence of nonexamining sources at the administrative law judge and

8  Appeal Council levels of administrative review."  Social Security Ruling § 96-6p.  Further

9  "administrative law judges and the Appeal Council may not ignore these opinions and must explain

10  the weight given to these opinions in their decisions."  (Id.)

11      The ALJ is not required to discuss each item of evidence, but the record should indicate that

12  all evidence presented was considered.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000); Clifton v.

13  Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  The reviewing court must "consider the record as a

14  whole, weighing both evidence that supports and evidence that detracts from the Secretary's

15  conclusion."  Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

16      Here, the Court finds the ALJ improperly ignored the expert opinion of state agency medical

17  consultant, Dr. Ross, in determining Plaintiff's RFC.  In his review of Plaintiff's Social Security file,

18  Dr. Ross found Plaintiff's ability to push and pull was limited in the upper and lower extremities.

19  (AR 191.)  In the upper extremities, Dr. Ross found Plaintiff to be precluded from constant push and

20  pull.  (AR 191.)  In the lower extremities, Dr. Ross found Plaintiff to be precluded from all pushing

21  and pulling.  (AR 191.)  Further, Dr. Ross found climbing ramps and stairs, balancing and stooping

22  could only be done occasionally.  (AR 192.)  Dr. Ross further found Plaintiff to be precluded from

23  kneeling, crouching and crawling.  (AR 192.)  Dr. Ross also opined overhead reaching should be

24  limited.  (AR 193.)  Ultimately, Dr. Ross concluded Plaintiff could stand/walk only 2-4 hours of an

25  8 hour day.  (AR 196.)

26      However, the ALJ concluded Plaintiff  had a residual functional capacity to lift/carry 20

27  pounds occasionally, lift/carry 10 pounds frequently, stand/walk for 2 hours of an 8 hour day, sit for

28  //

//

6 hours of an 8 hour day, but did not find any non-exertional limitations.[7] (AR 20.)  In arriving at this determination, the ALJ first gave little weight to the opinion of treating physician Paul Kater, M.D. that Plaintiff was "unable to work." (AR 26.)  The ALJ found Dr. Kater's opinion to be conclusory, vague, and based primarily on the subjective account of Plaintiff's symptoms rather than objective clinical findings. (AR 26.)  Second, the ALJ gave little weight to the opinion of treating chiropractor Anthony Woods, D.C., because chiropractors are not acceptable medical sources for purposes of establishing an impairment and because his findings were not substantiated by sufficient clinical findings. (AR 26.)  Finally, the ALJ gave much more weight to the opinion of consulting internist Carl Sainten, M.D., who concluded Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally, stand, sit and walk for 6 hours of an 8 hour day, had limited push and pull in the lower extremities, and could not climb, stoop, kneel or crouch. (Ar 26.)  The ALJ held Dr. Sainten's opinion was substantiated by his clinical findings and other objective evidence in the record. (AR 26.)  However, the ALJ neither considered the opinion evidence of Dr. Ross nor explained the weight afforded to his opinion in his decision. See Social Security Ruling § 96-6p; (AR 26.)

     The Court finds the ALJ committed legal error by ignoring the opinion evidence of state agency medical consultant, Dr. Ross, and failing to explain the weight afforded to his opinion. See Social Security Ruling § 96-6p.  Accordingly, the Court RECOMMENDS the case be remanded to the Social Security Administration for further proceedings in accordance with the applicable law. Based thereon, the Court RECOMMENDS Plaintiff's motion for summary judgment be GRANTED and Defendant's cross-motion for summary judgment be DENIED as to this issue.

**3.     Grid Rules**

     Plaintiff contends the ALJ's reliance on the Grid Rules was legal error. (Doc. 14-3 at 11-12.) Specifically, Plaintiff contends the Grid Rules do not take into consideration non-exertional limitations that include no pushing and pulling with Plaintiff's lower extremities, no kneeling,

---

[7] Non-exertional impairments are defined as all impairments which do not become worse or better as the claimant exerts himself more or less. 20 C.F.R. § 404.1545(d)416.945(d).  Some non-exertional impairments include: mental impairments, problems with hearing and vision, postural limitations, and obesity.  Postural limitations include restrictions on bending and stooping. Nesselrotte v. Sullivan, 939 F.2d 596.

1    crouching and crawling, and limited reaching in all directions.[8]  (Id. at 12.)  Second, even though the

2    ALJ may use the Grid Rules as a reference point for decision-making when they do not accurately

3    and completely describe a claimant's RFC, age, education, or work experience, the ALJ must

4    consider testimony from a vocational expert in order to rely on the Grid Rules.  (Id. at 12.)

5           Defendant contends the ALJ properly applied the Grid Rules to find Plaintiff could perform a

6    significant number of jobs despite his limitations.  (Doc. 17 at 4.)  Specifically, Defendant contends

7    (1) Plaintiff's non-exertional limitations did not significantly impact his sedentary to light work job

8    base, and (2) a vocational expert was not necessary in this case because Plaintiff's RFC fell between

9    sedentary and light work, and both grid rules directed a finding of not-disabled.  (Doc. 17 at 5-6.)

10          Once a claimant has established that he or she suffers from a severe impairment that prevents

11   claimant from returning to former employment, the claimant has made a prima facie showing of

12   disability.  At this point–step five– the burden shifts to the Social Security Administration to show

13   claimant can perform some other work that exists in significant numbers in the national economy,

14   taking into consideration the claimant's RFC, age, education, and work experience.  See 20 C.F.R. §

15   404.1560(b)(3).  There are two ways the Commissioner can meet this burden: (1) by the testimony

16   of a vocational expert; or (2) by reference to the Medical-Vocational Guidelines ("Grid Rules") at 20

17   C.F.R. § 404-p(2).  See Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577-

18   78 (9th Cir. 1988).  The Grid Rules allow the ALJ to take administrative notice of the number of

19   unskilled jobs in the national economy, and can direct a decision of "disabled" or "not disabled."

20   See 20 C.F.R. § 404(p)(2); Heckler v. Campbell, 461 U.S. 458, 467-68 (1983); Odle v. Heckler, 707

21   F.2d 439, 440 (9th Cir. 1983).

22          The Supreme Court has ruled, however, that the Grids do not apply to claimants whose

23   capabilities are not accurately described by a rule.  See Heckler, 461 U.S. at 458.  Where the

24   claimant's relevant characteristics differ materially in any respect from the characteristics

25   contemplated by the Grid Rules, the Grids may not be applied.  Auckland v. Massanari, 257 F.2d

26   1033, 1035 (9th Cir. 2001).  Specifically, where the claimant has a significant non-exertional

27   impairment, then the Social Security Administration may not apply the Grids.  Desrosiers v.

28

---

[8] Plaintiff mistakenly asserts Dr. Ross opined Plaintiff was limited in reaching in all directions. (AR 193.) Dr. Ross indicated Plaintiff should not perform any overhead reaching and that all other reaching, even if frequent, was "ok."

Secretary of Health and Human Services, 846 F.2d 573, 577 (9th Cir. 1988).  In particular, non-exertional impairments-including postural and manipulative limitations such as difficulty reaching, handling, stooping, climbing, crawling, or crouching-may, if sufficiently severe, limit a claimant's functional capacity in ways not contemplated by the grids.  20 C.F.R. § 404.1569; Tackett v. Apfel, 180 F.3d 1094, 1101-02 (9th Cir. 1999) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 577 (9th Cir. 1988) (Pregerson, J., concurring)).

"However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations." Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 577 (9th Cir. 1988); Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir.1986); Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir.1983); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983).  What this means is that if a claimant cannot perform a significant number of jobs within a Grid category because of non-exertional impairments, the claimant may be found disabled even though he or she has the exertional capacity to perform those jobs. (Id.)   In order to determine this, "[t]he ALJ must weigh conflicting evidence concerning the claimant's past work experience, education, and present psychological and physical impairments." Desrosiers, 846 F.2d at 577.  Moreover, in cases in which the Grids do not apply, the ALJ must take testimony from a vocational expert.  Polny v. Bowen, 864 F.2d 661 (9th Cir. 1988).

Here, the ALJ found Plaintiff was limited to sedentary[9] to light[10] exertion with a RFC to lift or carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 2 hours total out of an 8 hour day; and sit for 6 hours out of an 8-hour day.  (AR 24.)  Based thereon, and considering Plaintiff's age, education, and work experience, the ALJ concluded a finding of "not-disabled" was

---

[9] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R.§ 404.1567(a).

[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R.§ 404.1567(a).

1    directed by the Medical Vocational Rules.  (AR 27.)  Accordingly, the ALJ did not call a vocational

2    expert to establish the availability of suitable jobs in the national economy.

3         The Court finds the ALJ improperly disregarded evidence of Plaintiff's non-exertional

4    limitations.  See Tackett, 180 F.3d at 1102.  Specifically, the ALJ did not consider Dr. Ross'

5    opinions regarding Plaintiff's non-exertional limitations in either his RFC determination or step five

6    analysis.  The ALJ did not address Dr. Ross' finding that Plaintiff's ability to push and pull was

7    limited in the upper and lower extremities, that climbing ramps and stairs, balancing and stooping

8    could only be done occasionally, that kneeling, crouching and crawling could not be done at all, and

9    that overhead reaching should be limited.  (AR 191-193.)  Notwithstanding this evidence, the ALJ

10   applied the Grid Rules without "first determin[ing] if [the] claimant's non-exertional limitations

11   significantly limit the range of work permitted by his exertional limitations."  Desrosiers, 846 F.2d at

12   577.

13        The Court finds the ALJ committed legal error by disregarding evidence of Plaintiff's non-

14   exertional limitations and relying solely on the Grid Rules.  Accordingly, the Court

15   RECOMMENDS the case be remanded to the Social Security Administration for a determination of

16   whether Plaintiff's non-exertional limitations significantly limit the range of work permitted by his

17   exertional limitations.  Based thereon, the Court RECOMMENDS Plaintiff's motions for summary

18   judgment be GRANTED and Defendant's cross-motion for summary judgment be DENIED as to

19   this issue.

20   4.   **Evaluation of Obesity**

21        Plaintiff contends the ALJ's failure to evaluate the effect of Plaintiff's obesity on his chronic

22   back and knee impairments was legal error.  (Doc. 14-3 at 13.)  Defendant contends the ALJ's RFC

23   assessment accommodated all of Plaintiff's proven limitations, including those related to obesity.

24   (Doc. 17 at 8.)

25        According to the Social Security Rules, obesity, as other medical impairments, will be

26   deemed a "severe" impairment, "when alone or in combination with another medically determinable

27   physical or mental impairment(s), it significantly limits an individual's physical or mental ability to

28   do basic work activities."  SSR 02-01p.  "An [ALJ] will not make assumptions about the severity or

     functional effects of obesity combined with other impairments.  Obesity in combination with another

impairment may or may not increase the severity of functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." (Id.)  In Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005), the Ninth Circuit held the ALJ did not commit reversible error by failing to consider the plaintiff's obesity because the plaintiff did not point to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.  Specifically, neither the treatment notes nor any diagnoses addressed the claimant's limitations due to obesity and the medical record was silent as to whether and how claimant's obesity might have exacerbated her condition.  (Id.)  Moreover, claimant did not present any testimony or other evidence at the hearing that her obesity impaired her ability to work.  (Id.)

Here, the ALJ found Plaintiff had the severe impairments of chronic low back pain and chronic knee pain.  (AR 23.)  The ALJ stated, "the record shows claimant has been treated for complaints of back pain, knee pain, and elbow pain...He is status post right knee arthroscopic surgery in July 2004."  (AR 23.)  However, the ALJ did not consider the effect of Plaintiff's obesity, discussed by both Dr. Cardones and Dr. Ross, on Plaintiff's severe impairments.  On January 19, 2006, Dr. Ross diagnosed Plaintiff with morbid obesity.  (AR 190.)  In concluding Plaintiff could only lift/carry 20 pounds occasionally, lift/carry 10 pounds frequently, stand/walk for 2 hours of an 8-hour day, and sit for 6 hours of an 8-hour day, Dr. Ross cited Plaintiff's morbid obesity as a contributing factor.  (AR 191.)  Similarly, on October 19, 2006, Dr. Arthur Cardones, M.D., noted Plaintiff weighed 289 pounds and suffered from tenderness to palpation in the lower thoracic and lumbar spine.  (AR 239-246.)  On November 29, 2006, Dr. Cardones saw Plaintiff again and opined Plaintiff had chronic low back pain, chronic knee pain, and obesity.  (AR 241.)  On January 10, 2007, Dr. Cardones saw Plaintiff and noted his weight was 299 pounds.  (AR 242.)  Dr. Cardones noted Plaintiff's complaints of locking and giving way of the left knee, causing Plaintiff to collapse at times.  (AR 242.)  Examination of the left knee demonstrated positive swelling at the lateral joint line, with increased pain upon extension.  (AR 242.)  Dr. Cardones ordered an MRI of the left knee, and recommended Plaintiff lose weight, use a cane and a knee brace.  (AR 242.)

Nonetheless, the ALJ did not commit reversible error by failing to consider Plaintiff's obesity because Plaintiff did not point to any evidence of functional limitations due to his obesity which

would have impacted the ALJ's analysis.  Burch, 400 F.3d at 683.  First, although Dr. Ross

specifically considered Plaintiff's obesity, he found Plaintiff could still perform work activity

consistent with the ALJ's RFC finding.  (AR 24, 190-197.)  Thus, Dr. Ross' opinion regarding

Plaintiff's obesity did not impact the ALJ's analysis.  See Burch, 400 F.3d at 683.  Second, Dr.

Cardones merely diagnosed Plaintiff with obesity and did not discuss any functional limitations

Plaintiff suffered due to obesity which would have impacted the ALJ's analysis.

Based on the record, the ALJ did not commit reversible error by failing to consider Plaintiff's

obesity.  Plaintiff has not set forth, and there is no evidence in the record, of functional limitations as

a result of his obesity that would have impacted the ALJ's analysis.  Accordingly, the Court

RECOMMENDS Plaintiff's motion for summary judgment be DENIED and Defendant's cross-

motion for summary judgment be GRANTED at to this issue.

**5.      Credibility**

Plaintiff contends the ALJ's findings regarding Plaintiff's credibility are based on legal error

and are not supported by substantial evidence.  (Doc. 14-3 at 13-15.)  Specifically, Plaintiff asserts

the ALJ gave only general reasons for finding Plaintiff was not credible which were not based on

Plaintiff's testimony.  (Doc. 14-3 at 14-15.)  Defendant contends the ALJ gave clear and convincing

reasons for discounting Plaintiff's credibility.  (Doc. 17 at 5.)

In social security proceedings, the claimant must prove the existence of a physical or mental

impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings;

the claimants own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The effects

of all symptoms must be evaluated on the basis of a medically determinable impairment which can

be shown to be the cause of the symptoms.  20 C.F.R. § 416.929.  In making a residual functional

capacity determination, the ALJ is required to take into account all of the Plaintiff's symptoms,

including pain, to the extent they are reasonably consistent with the medical and other evidence in

the record.  20 C.F.R.§§ 404.1529, 416.929; S.S.R. 96-8p.

Once medical evidence of an underlying impairment has been shown, medical findings are

not required to support the alleged severity of the symptoms.  Brunnel v. Sullivan, 947 F.2d 341, 345

(9th Cir. 1991).  In the absence of objective medical evidence on the effect of symptoms, the ALJ

1   must make a finding on the credibility of the claimant's statements based on a consideration of the

2   entire case record.  Id. at 345-46.  "Generally, 'questions of credibility and resolution of conflicts in

3   the testimony are functions solely' for the agency."  Parra v. Astrue, 481 F.3d 742, 749 (9th Cir.

4   2007) (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation

5   omitted)).  If the ALJ finds the claimant's testimony about the severity of the claimant's pain and

6   impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently

7   specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimaint's

8   testimony.  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).  The ALJ's reasons must be

9   supported by "clear and convincing" evidence.  Lingenfelter v. Astrue, 504 F.3d 1028, 1038-39 (9th

10   Cir. 2007).  The ALJ may not discredit pain testimony merely because a claimant's reported degree

11   of pain is unsupported by objective medical findings.  Fair v. Bowen, 885 F.2d 597, 601 (9th Cir.

12   1989.)  The following factors may also be considered: (1) the claimant's reputation for truthfulness;

13   (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3)

14   claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or

15   third parties concerning the nature, severity, and effect of claimant's condition.  Thomas, 278 F.3d at

16   958.

17         Although the ALJ concluded Plaintiff's "medically determinable impairments could

18   reasonably be expected to produce the alleged symptoms," the ALJ found Plaintiff's statements

19   concerning the "intensity, persistence and limiting effects of these symptoms" were not "entirely

20   credible."  (AR 24.)  First, the ALJ noted Plaintiff was able to work for 8 hours per day for one day a

21   week despite his alleged disability.  (AR 24.)  Second, the ALJ concluded "the weight of the

22   evidence [did] not support the claims of the [Plaintiff's] disabling limitations to the degree alleged."

23   (AR 24.)  Specifically, the ALJ noted: (1) Plaintiff's doctors reported near normal physical

24   examination on multiple occasions with only abnormal findings of moderate tenderness, some

25   restricted range of motion of the lumbar spine, and slight limitation in abduction of the right

26   shoulder; (2) His x-rays of his knees and spine in October 2006 and January 2007 were normal

27   except for thinning of the medial facet of the retropatellar cartilage; (3) Plaintiff's course of

28   treatment had been conservative; and (4) Plaintiff could play computer games as long as he changes

1   positions frequently.  (AR 24-25.)  Third, despite Plaintiff's allegations of disabling fatigue and

2   weakness, Plaintiff did not exhibit any significant atrophy, loss of strength, or difficulty moving.

3   (AR 25.)  Fourth, the ALJ noted Plaintiff had not been taking pain medication prescribed for severe

4   pain.  (AR 25.)  Fifth, there was no evidence of loss of weight, sleep deprivation, or disuse or muscle

5   atrophy due to Plaintiff's pain.  (AR 25.)  Sixth, Plaintiff's allegations of significant limitations were

6   not borne out in his description of his daily activities.  (AR 25.)  Seventh, the ALJ stated none of

7   Plaintiff's physicians opined he was totally and permanently disabled from any kind of work.  (AR

8   25.)  Based thereon, the ALJ concluded Plaintiff's allegations were not "entirely credible" for the

9   purpose of establishing a more restrictive RFC.  (AR 25.)

10          The Court concludes the ALJ adequately articulated the reasons for discounting Plaintiff's

11   testimony concerning the intensity, persistence and limiting effects of his symptoms.  The ALJ

12   provided clear and convincing reasons for discounting Plaintiff's credibility, as he pointed to

13   specific evidence in the record undercutting Plaintiff's testimony as to the limiting extent of his

14   symptoms.  The ALJ found Plaintiff's testimony about the severity of his symptoms was inconsistent

15   with his ability to work 8 hours a day once a week.  (AR 24.)  Also, the ALJ found Plaintiff's

16   testimony about the severity of his symptoms was unsupported by objective medical evidence in the

17   record,

18   particularly that Plaintiff's doctors reported near normal physical examination on multiple occasions

19   and that Plaintiff's course of treatment had been conservative.  (AR 24-25.)  Moreover, the ALJ

20   noted Plaintiff's allegations of fatigue and weakness were contradicted by his physical state and that

21   Plaintiff had not been taking pain medication.[11]  (AR 25.)  Further, the ALJ noted Plaintiff had not

22   suffered any weight loss, sleep deprivation, or muscle atrophy due to pain, that his description of his

23   daily activities were contrary to his allegations, and that no physician opined he was totally and

24   permanently disabled.  (AR 25.)  Thus, the ALJ articulated clear and convincing reasons for

25   discounting Plaintiff's credibility by pointing to specific evidence in the record.

26   //

27   //

28
_____

[11] It is important to note that Plaintiff testified he was prescribed pain medication but did not take them because he
could not afford them.  (AR 256.)

1  //

2  Based thereon, the ALJ did not commit legal error in his credibility determination and his

3  decision is supported by substantial evidence.  Accordingly, the Court RECOMMENDS Plaintiff's

4  motion for summary judgment be DENIED and Defendant's cross-motion for summary judgment be

5  GRANTED as to this issue.

6  **V. CONCLUSION**

7  After a thorough review of the record in this matter and based on the foregoing analysis, this

8  Court RECOMMENDS:

9  (1)  With regard to the ALJ's failure to consider the opinion evidence of state agency

10  medical consultant, Dr. Ross, the Court RECOMMENDS the case be remanded to the Social

11  Security Administration for further proceedings in accordance with the applicable law.  Based

12  thereon, the Court RECOMMENDS Plaintiff's motions for summary judgment be GRANTED and

13  Defendant's cross-motion for summary judgment be DENIED as to this issue.

14  (2)  With regard to the ALJ's reliance on the Grid Rules, the Court RECOMMENDS the

15  case be remanded to the Social Security Administration for a determination of whether Plaintiff's

16  non-exertional limitations significantly limit the range of work permitted by his exertional

17  limitations.  Based thereon, the Court RECOMMENDS Plaintiff's motions for summary judgment

18  be GRANTED and Defendant's cross-motion for summary judgment be DENIED as to this issue.

19  (3)  With regard to consideration of Plaintiff's obesity, the Court RECOMMENDS

20  Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary

21  judgment be GRANTED at to this issue.

22  (4)  With regard to the ALJ's credibility determination, the Court RECOMMENDS

23  Plaintiff's motion for summary judgment be DENIED and Defendant's cross-motion for summary

24  judgment be GRANTED as to this issue.

25  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the

26  United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §

27  636(b)(1) (2007) and Local Rule 72.1(d).

28  //

//

08cv189-BEN (POR)

1       IT IS HEREBY ORDERED that **no later than September 4, 2009**, any party may file and

2   serve written objections with the Court and serve a copy on all parties.  The document should be

3   captioned "Objections to Report and Recommendation."

4       IT IS FURTHER ORDERED that any reply to the objections shall be filed and served **no**

5   **later than ten days** after being served with the objections.  The parties are advised that failure to

6   file objections within the specified time may waive the right to raise those objections on appeal of

7   the Court's order.  Martinez v. Y1st, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

8       **IT IS SO ORDERED.**

9   DATED:  August 21, 2009

10

11  _____
    LOUISA S PORTER

12  United States Magistrate Judge

13  cc:         The Honorable Roger T. Benitez
                all parties

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28