FILED

2009 SEP 17 AM 10:18

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WEBSTER,<br><br>             Plaintiff,<br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>             Defendant. | CASE NO. 08cv0189 BEN (POR)<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>[Doc. Nos. 14-3, 16, 19] |

This matter is before the Court upon the Magistrate Judge's Report and Recommendation. (Doc. No. 19.) For the reasons below, the Court **ADOPTS** the Report and Recommendation **WITH MODIFICATIONS; GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Summary Judgment; **GRANTS IN PART AND DENIES IN PART** Defendant's Cross-Motion for Summary Judgment; and **REMANDS** this case pursuant to the fourth sentence of 42 U.S.C. § 405(g).

I

BACKGROUND

A.   **Procedural History**

Plaintiff protectively applied for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on August 30, 2005, alleging that he became disabled on May 20, 2005, because of back, neck, shoulder, and knee problems. (AR 75-83, 123.) The Commissioner of Social Security ("Defendant" or the "Commissioner") denied the applications

initially on January 19 and 25, 2006, and upon reconsideration on May 16, 2006. (AR 28-39, 50-55.) Upon Plaintiff's request, an Administrative Law Judge ("ALJ") held a hearing on February 28, 2007. (AR 247-62.) The ALJ issued a hearing decision denying Plaintiff's claim on March 24, 2007. (AR 18-27.) The Appeals Council (the "AC") denied Plaintiff's request for review on November 29, 2007. (AR 4-6.) The ALJ's decision thus became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

Having exhausted his administrative remedies, Plaintiff brought this action on January 30, 2008, under sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"). 42 U.S.C. §§ 405(g), 1383(c)(3). He seeks judicial review of the Commissioner's final decision denying his applications for DIB and SSI under Titles II and XVI of the Act. *Id.* §§ 401-434, 1381-1383f. On April 27, 2009, Plaintiff filed a Motion for Summary Judgment . (Doc. No. 14.) On May 12, 2009, the Commissioner filed a Response to Plaintiff's Motion as well as a Cross-Motion for Summary Judgment. (Doc. Nos. 16, 17.) Plaintiff did not respond to the Commissioner's Cross-Motion for Summary Judgment.

On August 21, 2009, the Honorable Magistrate Judge Louisa S. Porter issued a Report and Recommendation recommending that the parties' motions for summary judgment be granted in part and denied in part. (Doc. No. 19.) The parties did not file objections.

**B.     Findings of the ALJ**

The ALJ made the following findings on March 24, 2007:

1.  [Plaintiff] meets the insured status requirements of the [Act] through September 30, 2010.

2.  [Plaintiff] has not engaged in substantial[,] gainful activity since May 20, 2005, the alleged onset date.

3.  [Plaintiff] has the following severe impairments: chronic low back pain[] and chronic knee pain.

4.  [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1.

5.  After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to lift or carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 2 hours total out of an 8-hour workday; and sit for 6 hours total out of an 8-hour workday.

6. [Plaintiff] is unable to perform any past relevant work.

7. [Plaintiff] was born [in October 1964] and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. [Plaintiff] has at least a high[-]school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not [Plaintiff] has transferable job skills.

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

11. [Plaintiff] has not been under a disability, as defined in the [Act], from May 20, 2005 through the date of this decision.

(AR 23-27 (citations omitted).)

## II

## STANDARD OF REVIEW

The duties of the district court in connection with the Report and Recommendation of a Magistrate Judge are set forth in Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b). The district judge must "make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b). "If neither party contests the [magistrate judge's] proposed findings of fact, the court may assume their correctness and decide the motion on the applicable law." *Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979). The magistrate judge's conclusions of law are reviewed de novo, regardless of whether any party filed objections thereto. *See Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial

evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## III

## ANALYTICAL FRAMEWORK AND BURDEN OF PROOF

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act is as follows:

1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Act and is not entitled to DIB or SSI. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two.

2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to benefits. If the claimant's impairment is severe, then the

|   |   |   |
|---|---|---|
|   |   | claimant's case cannot be resolved at step two and the evaluation proceeds to step three. |
|   | 3. | Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and, therefore, entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. |
|   | 4. | Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. |
|   | 5. | Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to DIB or SSI. If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and, therefore, not entitled to DIB or SSI. If the Commissioner cannot meet this burden, then the claimant is "disabled" and, therefore, entitled to disability benefits. |

*Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

"The burden of proof is on the claimant as to steps one to four. As to step five, the burden shifts to the Commissioner. If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (footnote omitted).

## IV

## DISCUSSION

### A.   Opinion of State Agency Medical Consultant Dr. Ross

On January 19, 2006, Dr. Ross, a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). (AR 190-97.) Dr. Ross opined that Plaintiff could occasionally lift and/or carry up to twenty pounds and frequently up to ten pounds. (AR 191.) Plaintiff could stand and/or walk between two to four hours and sit for about six hours in an eight-hour workday. (AR 191, 196.) Plaintiff could not constantly use his upper extremities to push or pull; his lower extremities could not do any pushing or pulling. (AR 191.)

Plaintiff could occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. (AR 192.) Although Plaintiff could occasionally balance and stoop, he could never kneel, crouch, or crawl. (AR 192.)

Plaintiff's abilities to handle, finger, and feel were unlimited. His ability to reach, however, was limited in that he could do no overhead reaching; "all other reaching is ok frequent is ok [sic]." (AR 193, 197.) Plaintiff had no visual or communicative limitations. (AR 193-94.)

According to Dr. Ross, Plaintiff was to avoid concentrated exposure to extreme cold and heat, wetness, humidity, and fumes and odors. (AR 194.) He was to avoid even moderate exposure to vibration and, therefore, could not work with vibrating tools. (AR 194.) Plaintiff was to avoid all exposure to heights. (AR 194.) As for Plaintiff's credibility, Dr. Ross found that "overall [Plaintiff is] not as disabled as [he] portrays to SSA." (AR 197.)

Plaintiff contends that the ALJ erroneously ignored the opinion of Dr. Ross. (Doc. No. 14-3 at 10-11.) Specifically, Plaintiff asserts that the ALJ did not include any of Dr. Ross' non-exertional limitations in his RFC assessment or explain what weight, if any, he gave Dr. Ross' opinion. (Doc. No. 14-3 at 10.)

"[I]n interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence," only that which is significant and probative. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotation marks omitted); *see also Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). However, although ALJs and the AC "are not bound by findings made by State agency or other program physicians and psychologists, . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions." Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2;[1] *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Moreover, as noted above, the Court "must consider the entire

---

[1] SSRs are final opinions and orders and statements of policy and interpretations that have been adopted by the Commissioner. *See Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999). Once published, these rulings are binding precedent upon ALJs. *See id.*; *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Lingenfelter*, 504 F.3d at 1035 (internal quotation marks omitted).

The ALJ gave little weight to the opinions of Dr. Kater, Plaintiff's treating physician, and Anthony Woods, D.C., Plaintiff's treating chiropractor. (AR 26.) Further, the ALJ gave more weight to the opinion of Dr. Sainten, a consulting internist, because it "is substantiated by his clinical findings and the other objective evidence of record." (AR 26.) As the Report and Recommendation points out, however, the ALJ neither considered the opinion evidence of Dr. Ross nor explained in his decision the weight afforded that opinion. The Court, therefore, concurs with the Report and Recommendation's conclusion that the ALJ committed legal error by failing to do so. Accordingly, with regard to this issue, the Court **ADOPTS** the Report and Recommendation, **GRANTS** Plaintiff's motion for summary judgment, and **DENIES** Defendant's cross-motion for summary judgment. The Court **REMANDS** this case to the Commissioner for further proceedings in accordance with the applicable law. *See* 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p.

**B.    ALJ's Reliance on Grids**

The ALJ found that Plaintiff has the RFC to lift or carry ten pounds frequently and twenty pounds occasionally; stand or walk for two hours total out of an eight-hour workday; and sit for six hours total out of an eight hour workday. (AR 24.) Therefore, the ALJ found that, on the basis of Plaintiff's RFC "for exertional work between sedentary work and light work, considering the [Plaintiff's] age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rules 201.28 and 202.21." (AR 27.)

Plaintiff maintains that the ALJ erroneously relied on the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2 (the "grids"), because Rules 201.28 and 202.21 do not take into consideration non-exertional limitations that include no pushing and pulling with his lower extremities; no kneeling, crouching, and crawling; and limited reaching in all directions. (Doc. 14-3 at 11-12.) Plaintiff further asserts that, even though the ALJ may use the grids as a reference point for decision-making when they do not accurately and completely describe a claimant's RFC, age, education, or work experience, the ALJ must consider testimony from a vocational expert in order to rely on the grids. (*Id.* at 12.)

As the Ninth Circuit has explained,

> [t]he grids are applied at the fifth step of the analysis under 20 C.F.R. [§§] 404.1520 [and 416.920], and present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. The grids categorize jobs by their physical-exertional requirements, and set forth a table for each category. A claimant's placement with the appropriate table is determined by applying a matrix of four factors identified by Congress–a claimant's age, education, previous work experience, and physical ability. For each combination of these factors, they direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. If a claimant is found able to work jobs that exist in significant numbers, the claimant is generally considered not disabled.

*Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citations omitted). "When the grids do not match the claimant's qualifications, the ALJ can either (1) use the grids as a framework and make a determination of what work exists that the claimant can perform, or (2) rely on a vocational expert when the claimant has significant non-exertional limitations." *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007) (citation omitted). Thus, the grids are inapplicable when a claimant's non-exertional limitations are sufficiently severe so as to significantly limit the range of work permitted by the claimant's exertional limitations. *Id.*; *see also Nguyen v. Chater*, 100 F.3d 1462, 1466 n.4 (9th Cir. 1996) (holding that ALJ erroneously relied on grids in case where claimant suffered from both exertional limitation and environmental restriction such as intolerance of fumes).

As noted in the Report and Recommendation, the ALJ disregarded evidence of Plaintiff's non-exertional limitations as opined by Dr. Ross. The ALJ erred in relying on the grids without first determining if Plaintiff's non-exertional limitations significantly limit the range of work permitted by his exertional limitations. Accordingly, with regard to this issue, the Court **ADOPTS** the Report and Recommendation, **GRANTS** Plaintiff's motion for summary judgment, and **DENIES** Defendant's cross-motion for summary judgment. The Court **REMANDS** this case to the Commissioner to determine whether Plaintiff's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.

### C.   Plaintiff's Obesity

The ALJ found that Plaintiff's severe impairments include chronic low back pain and chronic knee pain. (AR 23.) Plaintiff maintains that the ALJ failed to evaluate the effect of Plaintiff's obesity on his chronic back and knee pain impairments. (Doc. No. 14-3 at 13.) According to Plaintiff, the

ALJ was responsible for determining the effect of his obesity on his other impairments and its effect on his ability to work. (*Id.*)

As with any other medical condition, the Commissioner will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. SSR 02-1p, 2000 WL 628049, at *4. The Commissioner "will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." *Id.* at *6. The Commissioner "will evaluate each case based on the information in the case record." *Id.*

The Court agrees with the Report and Recommendation that, although the ALJ did not consider the effect of Plaintiff's obesity on his severe impairments, Plaintiff did not point "to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). Thus, the ALJ did not commit reversible error by failing to consider Plaintiff's obesity. *See id.* at 684 ("[The claimant] has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to consider."). Accordingly, with regard to this issue, the Court **ADOPTS** the Report and Recommendation, **DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's cross-motion for summary judgment.

### D.   Plaintiff's Credibility

After considering the evidence of record, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 24.) Plaintiff argues that the ALJ's findings regarding his credibility are based on legal error and not supported by substantial evidence. (Doc. No. 14-3 at 13-15.) In this regard, the Report and Recommendation found that the ALJ provided clear and convincing reasons for discounting Plaintiff's credibility by pointing to specific evidence in the record. (Doc. No. 19 at

19.) As discussed below, however, some of the reasons stated in the ALJ's decision are not proper, according to the Ninth Circuit.

### 1. Legal Standard

> In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives "specific, clear and convincing reasons" for the rejection.

*Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations omitted) (*quoting Lingenfelter*, 504 F.3d at 1036).

> The ALJ may consider many factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing."

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted); *see also Bray*, 554 F.3d at 1226-27; 20 C.F.R. §§ 404.1529, 416.929. Other factors include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2. Plaintiff's Pain Medication

The ALJ found that Plaintiff "has . . . not been taking the strong codeine or morphine based analgesics ordinarily prescribed for severe pain. He is either taking no medication or only taking Advil." (AR 25.) "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). In *Tommasetti*, for example, the ALJ permissibly inferred that the claimant's "pain was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program and did not seek an alternative or more-tailored treatment program after he stopped taking an effective medication due to mild side effects." 533 F.3d at 1039.

However, "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that claimant's minimal treatment regime was not proper basis for finding him not credible; claimant did not take other pain medication besides Ibuprofen because of adverse side effects); *see also Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

According to Plaintiff, he is unable to afford pain medication and only able to obtain Ibuprofen through County Medical Services. (AR 129, 256.) Because the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it," the ALJ improperly discounted Plaintiff's testimony on the basis of his treatment regimen for pain. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999); *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *cf. Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." (*quoting Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984))).

### 3. Activities of Daily Living

Plaintiff testified that his daily activities include taking care of his cat, cleaning the kitchen, and a little walking. (AR 256, 260-61.) Taking out the trash exacerbates his pain, however. (AR 261.) Plaintiff walks once a week to play card games two and a half blocks away from his house before feeling pain in his lower back and legs; he then needs to sit down. (AR 256-57, 258.) Plaintiff also experiences pain when he sits for prolonged periods of time, requiring him to shift positions every thirty to forty minutes. (AR 258-59.) Plaintiff walks with a cane because he has difficulty with his balance. (AR 259.) Plaintiff experiences pain in his left shoulder that prevents him from lifting objects heavier than ten to fifteen pounds. (AR 260.) Plaintiff also complained of suffering from migraine headaches, whistling in his ears, and pain on the left side of his neck. (AR 261.)

The ALJ found that Plaintiff's "allegations of significant limitations are not borne out in his description of his daily activities." (AR 25.)

> Although [Plaintiff] has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding

> [Plaintiff] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Plaintiff's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Plaintiff's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(AR 25.) The ALJ noted that, "[a]s long as [Plaintiff] changes positions frequently, he can play computer games, as indicated by treating physician Kater." (AR 25.)

"[D]aily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Orn*, 495 F.3d at 639 (*quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However,

> the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled.

*Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Furthermore, activities such as reading and watching television "are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 495 F.3d at 639.

Because "[t]he ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination," the ALJ erred in failing to do so in this case. *Id.* (alteration in original) (*quoting Burch*, 400 F.3d at 681); *see also Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (holding that daily activities may not be relied upon to support adverse credibility determination unless ALJ makes explicit finding to the effect that plaintiff's ability to perform those activities translated into ability to perform appropriate work activities on ongoing and daily basis).

**4.    Harmless Error**

Despite the foregoing, the fact that some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record overall. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *see also Carmickle*, 533 F.3d at 1162 ("Because we

conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if record did not support one of ALJ's stated reasons for disbelieving claimant's testimony, error was harmless).

Here, although the ALJ improperly relied upon Plaintiff's lack of pain treatment and his activities of daily living to discount his credibility, the ALJ's error was harmless because substantial evidence otherwise supports the ALJ's credibility determination. For example, the ALJ noted that Plaintiff's doctors "reported near normal physical examination on multiple occasions with only abnormal findings of moderate tenderness; some restricted range of motion of the lumbar spine; slight limitation in abduction of the right shoulder. He [has] no neurological deficit." (AR 24 (citation omitted).) The ALJ further noted normal X-rays of Plaintiff's knees and spine. (AR 25.) Furthermore, the ALJ noted that, despite Plaintiff's allegations of "disabling fatigue and weakness, he does not exhibit significant atrophy, loss of strength, or difficulty moving that [is] indicative of severe and disabling pain." (AR 25.) The ALJ, therefore, properly considered the objective medical findings in discounting Plaintiff's testimony. *See Burch*, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); *Connett v. Barnhart*, 340 F.3d 871, 873-74 (9th Cir. 2003) (holding that substantial evidence supported ALJ's decision to deny claimant's claim with respect to back, shoulder, and neck pain because, *inter alia*, X-rays, CT scans, and myelograms were normal); *Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (claimant who did not show muscle atrophy or other physical signs of totally disabled person not fully credible). Moreover, the ALJ properly considered Plaintiff's work activity after his alleged onset date of disability, although it did not rise to the level of substantial, gainful activity. (AR 24, 255-56.) *See Bray*, 554 F.3d at 1227 (considering recent work activity as relevant to credibility); *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (determining that substantial evidence supported ALJ's finding, *inter alia*, that claimant's ability to attend school three days a week was "an activity which is inconsistent with an alleged inability to perform all work"). *But see Lingenfelter*, 504 F.3d at 1038-39 ("It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did

not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment. . . . [I]t is at least as likely that the claimant tried to work in spite of his symptoms, not because they were less severe than alleged."). Accordingly, with regard to this issue, the Court **ADOPTS** the Report and Recommendation **AS MODIFIED, DENIES** Plaintiff's motion for summary judgment, and **GRANTS** Defendant's cross-motion for summary judgment.

## V
## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge **AS MODIFIED** herein; **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Summary Judgment; **GRANTS IN PART AND DENIES IN PART** Defendant's Cross-Motion for Summary Judgment; and **REMANDS** the case for further proceedings under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED**.

DATED: 9/16/09

Hon. Roger T. Benitez
United States District Judge